NEW ENGLAND GRINDING CO., INC. v. JAMES V. PORTO ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 72813

MILTON CHASNOFF v. JAMES V. PORTO ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 73156

Memorandum filed February 7, 1952.

*Nelson Harris*, of New Haven, for the Plaintiffs.

*James F. Rosen*, of New Haven, *John R. Thim* and *John B. Murphy*, both of Hamden, *Arthur V. James*, of Norwich, *Reubin Kaminsky* and *Harrison D. Schofield*, both of Hartford, for the Defendants.

MURPHY, J. As these two cases were tried together, arise from the same set of circumstances and must be measured by the same yardstick, a common memorandum should suffice.

Here is the chain of events and the cast of characters as briefly, concisely and chronologically as possible:

1. June 18, 1947—Defendant Joseloff, an attorney, representing defendant Nierwakowski, recovered verdict of $8000 against plaintiff Chasnoff and his partner Abraham Gilman in Superior Court, New London County, for loss of arm and other injuries, sustained in 1944 automobile collision.

2. February 26, 1948—Execution signed by defendant Burke, assistant clerk, Superior Court, New London County, for balance of judgment after crediting payment of $5000 full amount of liability coverage carried on vehicle.

3. March 20, 1948—Demand made on Chasnoff by defendant Porto, deputy sheriff: Refused to pay or disclose estate upon which to levy. Execution returned to court partly satisfied April 16, 1948.

4. April 19, 1948—Alias execution issued by Burke containing provision for attachment of body. Gilman arrested in New London County May 1, 1948. Copy of execution left with jailer.

5. May 5, 1948—Joseloff and Nierwakowski enjoined from further action to imprison Chasnoff and Gilman in separate suit at New Haven.

6. November 9, 1948—Alias execution returned to court by Joseloff under direction of trial judge in injunction proceedings.

7. December 2, 1948—Injunction dissolved and judgment rendered for defendants therein by Superior Court, New Haven, No. 71127.

8. June 21, 1949—Supreme Court of Errors affirmed Superior Court judgment. *Gilman* v. *Joseloff*, 135 Conn. 595.

9. June 23, 1949—Pluries execution issued by Burke. Mailed to Porto.

10. June 24, 1949—Porto demanded payment from Chasnoff. Told him he would have to pay or go to jail. Chasnoff, his brother Eugene and Sam Fox, partners doing business under corporate setup as New England Grinding Company, implored Porto to withhold execution over weekend and promised to have money Monday, June 27. Offered to turn over Chasnoff's Buick, registered in the name of company, as security. Crude bill of sale to Porto, trustee, executed. Eugene Chasnoff drove car to storage garage and delivered keys to Porto.

11. June 27, 1949—Porto vainly attempted to contact Chasnoff. Chasnoff's attorney filed motion to reargue injunction suit in Supreme Court. Joseloff told Porto to withhold further action pending reargument. Chasnoff raised sufficient money to satisfy judgment but on advice of attorney withheld payment.

12. June 29, 1949—Chasnoff's attorney demanded return of automobile from Porto and attempted to replevy same. Porto refused to surrender car.

13. June 30, 1949—Porto recorded bill of sale.

14. July 12, 1949—Supreme Court denied motion to reargue.

15. July 15, 1949—Porto prepared to arrest Chasnoff. Latter agreed to pay with funds collected on June 27. Chasnoff told Porto that attorney advised against paying and told him to go to jail. Porto delivered him to jail. Defendant Kromer, as jailor, refused to accept copy of execution. Porto surrendered original to him.

Pluries execution called for payment of $3049.39 plus officers' fees. Chasnoff's attorney and brother Eugene appeared at jail. Tendered check for $3049.39 to defendant Rogers, high sheriff. Demanded release of Chasnoff. Sheriff did not accept check

and release him until officers' fees were computed at $74.84 and were paid. Fees were paid in cash. Chasnoff was released. His Buick was returned to him in accordance with condition under which it was transferred originally.

That should have ended the determined, though unwise, effort to prevent Nierwakowski from collecting the judgment that represents one arm amputated between elbow and shoulder. It did not, and these two suits are the result.

The main contention of the plaintiff is that the third (pluries) execution and all actions based upon it are void because it was issued by Burke in the New London case before the expiration of the ten days within which a motion to reargue the New Haven injunction suit in the Supreme Court could be filed. Practice Book § 441.

Counsel loses sight of the fact that the New London case and the New Haven action were separate and distinct. The injunction only ran against Joseloff and Nierwakowski. Neither Burke nor Porto had been joined as parties. Knowing that the rules provided for the motion and that a stay automatically followed where the motion was filed, it would have been better practice to have waited until the expiration of the time but under the circumstances existing here the execution was not void though it presumably might have been voidable if attacked in the case in which it was issued.

The second (alias) execution was not returned to court within the sixty-days within which it is to be returnable under General Statutes § 8094. Action upon it was held up by the injunction. The late return upon the instruction of the trial judge did not prevent the issuance of the pluries execution so long as the judgment remained unsatisfied.

The courts have held that the issuance of a second writ of execution before the return of the first is irregular and perhaps voidable but not void. Alderson, Judicial Writs & Process, p. 111, § 57, 21 Am. Jur. 44, § 71; Boston v. Santosuosso, 308 Mass. 202.

The jailer at New Haven confused the rule with respect to mittimuses in criminal matters with that governing body executions in civil cases. Practice Book § 297, provides that the original must be left with the jailer or warden in criminal cases. General Statutes § 8093, sets out the form of an execution. It

concludes: "Hereof fail not, and make due return of this writ, with your doings thereon." A copy should have been left at the jail and the original returned to court.

Porto made no attempt to arrest Chasnoff on June 24. He sought to collect the amount due on the judgment and withheld execution at the request of and for the accommodation of the plaintiffs. If Chasnoff had returned to New Haven on Monday June 27 with the money he obtained and paid it over to Porto as he agreed to do, he would have saved himself time, money and the "headaches" that followed the clanking of the jail door upon him on July 15.

The issues are found for the defendants in both cases. Judgments and costs accordingly.